UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
UNITED STATES OF AMERICA            :
                                    :   Crim. No. 13-507 (NLH)
                                    :
     v.                             :
                                    :
WINSTON WOMBLE,                     :   **OPINION**
                                    :
          Defendant                 :
_____ :

**APPEARANCES**:

WINSTON WOMBLE
# 64815-050
FCI HAZELTON
FEDERAL CORRECTIONAL INSTITUTION
P.O. BOX 5000
BRUCETON MILLS, WV  26525

     *Pro se*

DIANA V. CARRIG
OFFICE OF THE U.S. ATTORNEY
401 MARKET STREET
P.O. BOX 1427
CAMDEN, NJ 08101

     *Counsel for the United States*

**Hillman, District Judge**

     Before the Court is Winston Womble's ("Defendant") Motion for Reduction of Sentence under the First Step Act, 18 U.S.C. § 3582(c).  (ECF 35).  For the reasons expressed below, Defendant's motion will be denied.

**Background**

On August 2, 2013, Defendant entered a plea of guilty to conspiring to distribute more than 500 grams of cocaine in violation of 21 U.S.C. § 846. (ECF 18). Thereafter, on July 28, 2014, the Court sentenced Defendant to 180 months of imprisonment and a 5-year term of supervised release. (ECF 23).

Defendant filed the instant pro se motion on December 6, 2021 (ECF 35). Defendant's motion seeks a Reduction of Sentence under the First Step Act, 18 U.S.C. § 3582(c)(1)(A), but also makes reference to § 404 of the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018). The Government filed a letter in opposition to the motion on April 26, 2022. (ECF 40). The Court considers Defendant's motion against this factual backdrop.

**Discussion**

A. **Legal Standard for Compassionate Release**

Under the First Step Act, a court may afford a defendant "compassionate release for 'extraordinary and compelling reasons.'" United States v. Sellers, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020) (quoting 18 U.S.C. § 3582(C)(1)(A)(i)). Before bringing a motion for reduced sentence on their own behalf, defendants first "must ask the Bureau of Prisons (the "BOP") to do so on their behalf, give the BOP thirty days to respond, and exhaust any available administrative appeals."

2

United States v. Raia, Civ. No. 20-1033, 2020 WL 1647922, at *1 (3d Cir. Apr. 2, 2020) (citing § 3582(c)(1)(A)).  "Thus, under the First Step Act, a defendant seeking a reduction in his term of imprisonment bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." Sellers, 2020 WL 1972862 at *1 (citing 18 U.S.C. § 3582(C)(1)(A)).

At the second step, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3852(c)(1)(A) "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." United States v. Pabon, Crim. No. 17-165-1, 2020 WL 2112265, at *2 (E.D. Pa. May 4, 2020).

B. **Analysis of Motions for Compassionate Release**

    a. **Defendant has satisfied the exhaustion requirements**

Defendant applied to the BOP for compassionate on October 20, 2021 and his request was denied by the BOP on November 1, 2021.  (ECF 35 at 5, 18).  The Government does not dispute that Defendant has exhausted his administrative remedies.  (See ECF 40).  Thus, the Court deems the administrative exhaustion requirement for his motions to be satisfied.

3

### b. **Defendant fails to establish "extraordinary and compelling" reasons for his release**

Defendant argues that his medical conditions of type II diabetes, hypertension, high cholesterol, and obesity constitute "extraordinary and compelling reasons" justifying his release. (ECF 35 at 10). Defendant argues that his pre-existing medical conditions place him at a high risk for complications from COVID-19. (Id.) Specifically, Defendant argues that he is at an increased risk for an adverse outcome if he contracts COVID-19 because he has multiple underlying health conditions. (Id. at 11). Defendant also argues that the BOP's handling of the pandemic increases his odds of contracting COVID-19. (Id. at 12).

The Government contests Defendant's position. They argue that Defendant's medical records show that he has failed to follow the advice of the medical professionals treating him while incarcerated, failed to take his medications, and refused to take the COVID-19 vaccine. (ECF 40 at 4). They argue that when Defendant previously contracted COVID-19 he recovered without any repercussions. (Id. at 5). Essentially, they argue that Defendant has not proffered any evidence that his conditions are not being adequately addressed by the BOP and that he faces a particularly increased risk for adverse outcomes if he contracts COVID-19. (Id.) Finally, they point to metrics

that they contend show that the BOP is adequately responding to the pandemic.[1]  (Id. at 5-7).

The Court does not take lightly the difficulties that Defendant's medical conditions place on him particularly while in prison.  But Defendant has not sufficiently shown how his conditions are exacerbated by COVID-19 or how they present different circumstances than those the Court considered when it sentenced him.  United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); United States v. Hunter, 12 F.4th 555, 570 (6th Cir. 2021) (holding that facts that existed at the time of sentencing could not be considered "extraordinary and compelling"); Chu v.

---

[1] They also argue that to the extent that Defendant is asking the Court to order the BOP to put him on home confinement rather than asking the Court to modify his sentence, the Court does not have the power to do so.  The Government is correct. United States v. Goldblatt, 2021 WL 287881, at *2 (D.N.J. Jan. 28, 2021) ("Although the First Step Act [], 18 U.S.C. § 3582(c)(1)(A)(i), permits district courts to grant compassionate release where there exist 'extraordinary and compelling reasons' to reduce a sentence, the CARES Act did not grant the district court the power to order an inmate to home confinement."); Washington v. Warden Canaan USP, 858 F. App'x 35, 36 (3d Cir. 2021) ("[W]e agree with the District Court that whether to transfer an inmate to home confinement is a decision within the exclusive discretion of the BOP.").

Hollingsworth, 2014 WL 3730651, at *5 (D.N.J. July 28, 2014) (same).

The applicable guidance from the Sentencing Commission falls under Comment 1 under § 1B1.13 of the guidelines. U.S.S.G. § 1B1.13, cmt. n.1(A).  The Court cannot say that Defendant suffers from conditions that fall into the same categories as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia[,]" examples offered by the Sentencing Commission of the types of illnesses that might constitute "extraordinary and compelling circumstances."  Id.  It also cannot say that Defendant's conditions substantially "diminish[] the ability of [Defendant] to provide self-care within the environment of a correctional facility and from which he...is not expected to recover." Id.  Though the Court accepts that Defendant's conditions make his incarceration challenging, the Court does not find sufficient evidence in the record to show that he cannot care for himself.  While the Centers for Disease Control and Prevention (the "CDC") have identified obesity, hypertension, and diabetes as risk factors associated with COVID-19, [2] courts have held that the mere fact that a defendant

---

[2] CENTERS FOR DISEASE CONTROL AND PREVENTION, COVID-19, PEOPLE WITH CERTAIN MEDICAL CONDITIONS, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited May 9, 2022).

6

has a condition listed as a risk factor by the CDC is not enough to warrant compassionate release. United States v. Brashear, 2021 WL 5239119, at *3 (D.N.J. Nov. 10, 2021) ("Despite the risk of COVID-19, multiple decisions in the Third Circuit, and multiple decisions in this District, have denied compassionate release to inmates suffering from obesity, hypertension, and/or other health issues."); United States v. Hoffman, No. 21-2452, 2022 WL 843484, at *1 (3d Cir. Mar. 22, 2022) (affirming the district court's holding that obesity and type II diabetes did not constitute "extraordinary and compelling" reasons justifying release where the conditions were managed in prison). In the absence of specific evidence showing a more heightened risk, the Court declines to find that Defendant has made a showing of medical conditions, even with the possibility of contracting COVID-19, which warrant his release.

At least as of the close of briefing, Defendant has refused to take a COVID-19 vaccine. (See ECF 40 at 1). However, FCI Hazelton, where Defendant is housed, has mitigation efforts aimed at controlling the spread of the coronavirus that appear to be effective. Currently, FCI Hazelton has no active inmate or staff positive tests.[3] Over the course of the pandemic, 2

---

[3] See FEDERAL BUREAU OF PRISONS, COVID-19 CORONAVIRUS COVID-19, https://www.bop.gov/coronavirus/ (last visited May 9, 2022).

inmates have died as a result of infection by COVID-19, and 165 inmates have recovered from positive infections.[4]

In addition, according to the BOP, 3,075 inmates at FCC Hazelton have been fully vaccinated out of a population of 3,604.[5]  Given the well-established and accepted evidence that the available vaccines are both safe and effective, the Court finds that the vaccination rate inside FCC Hazelton weighs against Defendant's request for relief.

After a review of the record as a whole, the Court finds that Defendant, who currently seems to be managing his conditions effectively at FCI Hazelton, does not present "extraordinary and compelling reasons" supporting his release.

### c. 3553(a) Factors weigh against Defendant's Favor

Even if Defendant could "establish extraordinary and compelling reasons" for his release, the Court may reduce an inmate's sentence only if the applicable sentencing factors under § 3553(a) warrant a reduction.  Here, they do not.

Defendant argues that he is no longer a danger to the community but does not explain why.  Instead, he argues that he received an unusually long sentence and that if he were

---

[4] Id.

[5] Id.; FEDERAL BUREAU OF PRISONS, OUR LOCATIONS, https://www.bop.gov/locations/list.jsp (last visited May 9, 2022).  FCC Hazelton includes both FCI Hazelton and USP Hazelton.

sentenced today, he would not be designated a career offender. (ECF 35 at 15).

The Government argues that Defendant is a lifelong drug trafficker, having committed his first offense at 14 and the instant one at 29.  (ECF 40 at 16).  They highlight the amount of drugs at issue for Defendant's current offense and the amount of weapons involved in the drug trafficking conspiracy.  (Id.) They further point out that this Court afforded Defendant a sentence below the guidelines range when it sentenced him. (Id.)  Finally, they underscore the fact that Defendant has had multiple disciplinary violations, including assault and possession of a weapon as recently as 2020.  (Id. at 16-17).

The Court sees no reason to disturb the sentence it previously imposed.  Specifically, Defendant attempted to traffic a significant amount of cocaine, brought weapons when he sought to purchase the drugs, and fled law enforcement when they tried to detain him.  18 U.S.C. § 3553(a)(1).  Indeed, in imposing Defendant's sentences, the Court considered Defendant's repeated drug offenses and the quantity of drugs that Defendant attempted to traffic.  18 U.S.C. § 3553(a)(2)(A).  Deterrence, both specific and general, also militates against release given the magnitude of drugs at issue and the fact that Defendant has committed multiple drug trafficking offenses in the past and

committed the instant offense while on probation. Id. at § 3553(a)(2)(B).

Defendant's repeated flouting of the law suggests that recidivism is still an active concern in this case and underscores the need to protect the public from further crimes that he may commit, especially given the number of weapons that Defendant brought to a public shopping center when he sought to buy cocaine. Id. at § 3553(a)(2)(C). The advent of COVID-19 does not change the balance in Defendant's specific situation where he has not shown that he is at a materially increased risk of serious illness or death while incarcerated and there have been no material differences in the § 3553(a) factors that animated his current sentence.[6] Thus, the Court declines to grant Defendant's motion for compassionate release.

C. **Legal Standard for Reduction of Sentence Per § 404 of the First Step Act.**

On August 3, 2010, the Fair Sentencing Act (the "FSA") was enacted to reduce the disparity between statutory penalties for

---

[6] To the extent that Defendant seeks to use his motion for compassionate release as a vehicle to attack his designation as a career offender, such attacks are not cognizable under § 3852(c). United States v. Handerhan, 789 F. App'x 924, 926 ("The terms of neither the statute nor its policy statement provide for release on the basis of arguments like Handerhan's that were or could have been raised on direct appeal or in a § 2255 motion, let alone for defendants like Handerhan who already have completed a § 2255 proceeding and who are subject to the restrictions on filing second or successive § 2255 motions.").

trafficking crack cocaine and powder cocaine.  Pub. L. No. 111-220, 124 Stat 2372 (2010).  The FSA raised the drug quantities required to trigger certain minimum penalties pursuant to 21 U.S.C. § 841, the statute under which Defendant was convicted.  The provisions of the FSA were later made retroactive in 2018 with the passage of § 404 of the First Step Act.  United States v. Easter, 975 F.3d 318, 320 (3d Cir. 2020).

A court that has sentenced a defendant for a "covered offenses" prior to the enactment of the FSA may resentence a Defendant in accordance with the FSA's penalty changes per § 404 of the First Step Act.  See Easter, 975 F.3d at 323 (discussing motions made under § 404(b).  A court in analyzing such a motion must consider the § 3553(a) factors.  Id. at 324.  A court may only consider changes in facts that go to the § 3553(a) factors that were not in play at the time of original sentencing.  United States v. Murphy, 998 F.3d 549, 555 (3d Cir. 2021), as amended (Aug. 4, 2021) ("This new assessment must include any new, relevant facts that did not exist, or could not reasonably have been known by the parties, at the time of the first sentencing (*e.g.*, a defendant's post-sentencing rehabilitation or new health problems).  But the resentencing court cannot reach beyond those circumstances to reconsider the facts as they stood at the initial sentencing.") (internal citations omitted).

Notably, the decision by a court to reduce a sentence under § 404(b) is discretionary and nothing requires a court to do so. United States v. Bullock, No. 20-3003, 2021 WL 4145233, at *2 (3d Cir. Sept. 13, 2021) ("Action by a district court under the First Step Act is discretionary and does not entitle movants like Bullock to plenary resentencing or a resentencing hearing."); Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018) (providing, in § 404(c), that "Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.").

D. **Analysis of Motion to Reduce Sentence Per § 404 of the First Step Act.**

Defendant's motion under § 404(b) to reduce his sentence by applying the FSA retroactively is nonsensical for the simple reason that Defendant was sentenced in 2013, after the passage of the FSA. (ECF 28). The provisions of law that were modified by the FSA were in place for the Court's consideration at the time of Defendant's sentencing. Further, § 404(b) contemplates that a defendant may file a motion if he or she was sentenced under a provision modified by sections 2 or 3 of the FSA. United States v. Corbin, No. 07-CR-509, 2020 WL 1956040, at *2 (D.N.J. Apr. 23, 2020). Those sections have nothing to do with Defendant's designation as a career offender. See United States v. Moyhernandez, 5 F.4th 195, 206 (2d Cir. 2021) ("[E]ligibility

under the First Step Act turns on whether the defendant was sentenced 'for a covered offense,' and not on career-offender status."); cf. United States v. Barlow, 544 F. Supp. 3d 491, 497 (D.N.J. 2021), aff'd, No. 21-2267, 2022 WL 820462 (3d Cir. Mar. 18, 2022) ("The First Step Act conditions relief on whether a defendant is convicted of a 'covered offense,' not on whether the United States Sentencing Commission ('USSC') has updated the Guidelines to reflect Congress' latest policy determinations or more modern theories of drug sentencing."); United States v. Crews, 385 F. Supp. 3d 439, 447 n.7 (W.D. Pa. 2019) ("The First Step Act does not permit the court to consider other statutory or sentencing guideline amendments enacted since the date the defendant committed his or her offense.").

Finally, the FSA and § 404(b) are not applicable to Defendant's situation since his conviction was based solely on a conspiracy to traffic powder cocaine. United States v. Stitt, No. CR 03-259, 2021 WL 826744, at *2 (W.D. Pa. Mar. 4, 2021) ("Defendant is serving his sentence for an offense involving powder cocaine, not crack cocaine. Therefore, he may not invoke Section 404 of the First Step Act to his benefit in a motion for a sentence modification brought pursuant to Section 3582(c)(1)(B)."). Thus, to the extent that Defendant is also moving for a sentence reduction under § 404(b), that application must also be denied.

**Conclusion**

For the reasons set forth above, Defendant's Motion for Reduction of Sentence under the First Step Act, 18 U.S.C. § 3582(c) (ECF 35) will be denied.

An accompanying Order will issue.

Dated: May 11, 2022　　　　　　　　s/   Noel L. Hillman
At Camden, New Jersey　　　　　　NOEL L. HILLMAN, U.S.D.J.